IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **JAMES S. ERVIN, Sr., #06740-027,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 24-cv-02549-JPG |
| | ) |
| **G. ZYKAN,** | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

**GILBERT, District Judge:**

This matter is now before the Court for review of Plaintiff James S. Ervin, Sr.'s Complaint filed pursuant to *Bivens v. Six Unknown Named Agents of Fed'l Bureau of Narcotics*, 403 U.S. 388 (1971). (Docs. 1 to 1-4). In the Complaint, Plaintiff brings claims for constitutional deprivations that allegedly occurred at the Federal Correctional Institution in Greenville, Illinois (FCI-Greenville). The Court previously identified eight claims (Counts 1 through 8) and severed five claims (Counts 4, 5, 6, 7, and 8) into separate cases on August 13, 2025. (*See* Docs. 16, 26). This case focuses on Counts 1, 2, and 3 against Defendant G. Zykan. (Doc. 26).

Counts 1 through 3 are subject to preliminary review under 28 U.S.C. § 1915A, which requires the Court to screen prisoner complaints and filter out any portion that is legally frivolous or malicious, fails to state a claim for relief, or requests money damages from an immune defendant. 28 U.S.C. § 1915A(a)-(b). At this juncture, the factual allegations are liberally construed. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## The Complaint

Plaintiff makes the following allegations pertaining to Counts 1, 2, and 3 in the Complaint (*see* Doc. 1, pp. 1-13; Doc. 1-1, pp. 1-42; Doc. 1-2, pp. 1-46; Doc. 1-3, pp. 1-52): In March 2020,

1

Plaintiff made a formal inquiry into the quantity and quality of food served at FCI-Greenville. (Doc. 1-1, p. 12). He noted that the FBOP's national menu provided inmates with 2,475 calories per day. *Id*. at 12-13. After he observed Food Service Administrator Zykan (FSA Zykan) weighing portions of chicken totaling only 3.53 ounces for inmate meals, Plaintiff pointed out that the serving size should be twice as large. *Id*.

When he complained, things changed. Warden Santiago conducted a random test of 7 meal days (3 meals per day) and determined that the average calories provided to FCI-Greenville inmates was only 1,725 calories per day. *Id*. at 13. FSA Zykan began bidding for larger portions of chicken quarters, chicken patties, and fish patties. FSA Zykan also added 19 days of increased starches to the monthly menu. *Id*.

Plaintiff nevertheless filed an electronic complaint about a meal on April 12, 2020. FSA Zykan responded by going to Plaintiff's cell and screaming, "F*ck your complaint! . . . [Y]ou're the reason the compound's not getting lasanga (sic). You're getting spahetti (sic)! . . . Now write that shit up!" *Id*. at 11. FSA Zykan said this in front of other inmates, and Plaintiff maintains that he did so to incite violence against Plaintiff in retaliation for filing grievances about the prison's food. *Id*. at 12. Plaintiff describes no actual violence or retaliation that resulted. *Id*.

FSA Zykan then tried to bribe Plaintiff. *Id*. at 14. He went to Plaintiff's cell with a package of "exclusive" stuff and told Plaintiff that he had something special for him from an "outside" source that was not available to the general inmate population. *Id*. FSA Zykan explained that Plaintiff would continue receiving the "stuff," if he stopped filing grievances. *Id*. When Plaintiff realized that other inmates would not receive the same items, he refused the gift so that other inmates would not perceive him as favored. *Id*. FSA Zykan reacted by loudly proclaiming him to

be "the biggest piece of shit on the yard" and then stormed off in a "profanity laced rant." *Id*. at 15. When Plaintiff filed a grievance, no one interviewed him before siding with FSA Zykan.

Based on the above allegations, the Court has recognized the following claims against Defendant Zykan in the *pro se* Complaint (Docs. 1 to 1-4):

**Count 1:** First Amendment claim against Zykan for retaliating against Plaintiff for filing grievances about the prison's food by loudly screaming that inmates would receive spaghetti, not lasagna, because of him in March/April 2020.

**Count 2:** First Amendment claim against Zykan for retaliating against Plaintiff for rejecting his gifts by proclaiming that Plaintiff is "the biggest piece of shit on the yard" in the presence of other inmates in March/April 2020.

**Count 3:** Eighth Amendment claim against Zykan for placing Plaintiff's safety in danger by loudly screaming that all inmates would receive spaghetti instead of lasagna because of him and later proclaiming that he was the "biggest piece of shit on the yard" in March/April 2020.

(*See* Docs. 16, 26).

## Discussion

All three claims for money damages against the federal prison's food service administrator arise under *Bivens v. Six Unknown Named Agents*, 403 U.S. 388, 392 (1971). *Bivens* is considered the federal counterpart to an action brought against a state official under 42 U.S.C. § 1983. *Bush v. Lucas*, 462 U.S. 367, 374 (1983). However, *Bivens* and § 1983 are not identical. They derive from different sources of authority and offer different remedies. *Ziglar v. Abbasi*, 582 U.S. 120, 129 (7th Cir. 2017).

In *Bivens*, the United States Supreme Court recognized an implied damages remedy against individual federal agents involved in an unreasonable search and seizure that violated the Fourth Amendment. *Bivens*, 403 U.S. at 392. The Supreme Court extended this remedy against federal officers only twice, to include a gender discrimination claim under the Fifth Amendment in *Davis v. Passman*, 442 U.S. 228 (1979), and a medical deliberate indifference claim under the Eighth

3

Amendment in *Carlson v. Green*, 446 U.S. 14 (1980). The Court has since declined to extend the remedy to cover any new context or new category of defendants.

In *Egbert v. Boule*, 596 U.S. 482 (2022), the United States Supreme Court made clear that further expansion of this implied damages remedy is considered a strongly disfavored judicial activity. *Egbert*, 596 U.S. at 491-92. Therefore, a district court presented with a *Bivens*-type claim must determine whether the claim differs in a meaningful way from those claims recognized in *Bivens, Passman*, or *Carlson*, and, if so, consider whether "special factors" counsel against expansion of the remedy into a new context absent congressional action. *Id.*; *Ziglar*, 582 U.S. at 139-40. This inquiry often hinges on a single question: whether there is any reason to think that the federal courts are arguably less equipped than Congress to create a damages remedy. *Egbert*, 596 U.S. at 491-92; *Goldey v. Fields*, 606 U.S. 942, 944 (June 30, 2025).

Against this backdrop, the Court finds that all three claims present new contexts. Counts 1 and 2 involve First Amendment retaliation claims, which are unlike the claims at issue in *Bivens*, *Carlson,* or *Passman*. None of these cases involved retaliation or other claims arising under the First Amendment. Moreover, the Supreme Court more recently found no *Bivens* remedy for a First Amendment retaliation claim in *Egbert*. *See Egbert*, 596 U.S. at 498. Count 3 involves an Eighth Amendment failure-to-protect claim that is unlike those claims recognized in *Bivens, Carlson,* or *Passman*. *Carlson* is the only case involving an Eighth Amendment claim, and that claim arose in the context of inadequate medical care rather than a failure to protect an inmate. The Supreme Court more recently declined to expand a *Bivens* remedy to an excessive force claim under the Eighth Amendment. *Goldey v. Fields*, 606 U.S. 942 (2025). And, the Seventh Circuit Court of Appeals previously declined to extend this relief to an Eighth Amendment failure-to-protect claim in *Sargeant v. Barfield*, 87 F.4th 358 (7th Cir. 2023).

Counts 1, 2, and 3 also involve a new category of defendants, *i.e.*, the prison's food service administrator. A prisoner's complaint about retaliation or inadequate protection by the prison's staff is more appropriately addressed through the facility's administrative remedies process, not the federal court. BOP facilities makes use of this process to resolve grievances internally, and this includes FCI-Greenville.

Given this, the Court declines to recognize an implied damages remedy in this new context or against this new category of defendant. Counts 1, 2, and 3 against FSA Zykan are foreclosed by *Egbert*. All three claims are subject to dismissal on this basis alone.

Plaintiff's claims are also time-barred. The statute of limitations for *Bivens* claims is the same as § 1983 claims. *Cesal v. Moats*, 851 F.3d 714, 721-22 (7th Cir. 2017). In both contexts, the Court borrows the statute of limitations for personal injury actions in the state where the alleged injury occurred. *Id*. at 722; *Chambers v. Cross*, 788 F. App'x 1032, 1033 (7th Cir. 2019). Plaintiff's injuries occurred in Illinois, and a 2-year statute of limitation governs personal injury claims under Illinois law. 735 ILCS § 5/13-202; *Cesal*, 851 F.3d at 721-22. According to the allegations on the face of the Complaint, all three claims arose at FCI-Greenville in March and April 2020. Plaintiff signed and filed the Complaint more than four years later. His signature is dated September 23, 2024. The Complaint was filed on November 27, 2024. Plaintiff commenced this action well beyond the applicable 2-year limitations period. Therefore, Plaintiff's claims in Counts 1, 2, and 3 are time-barred and shall be dismissed with prejudice.

## Disposition

The Complaint (Docs. 1 through 1-4), including **COUNTS 1, 2,** and **3** against Defendant **G. ZYKAN**, does not survive review under 28 U.S.C. § 1915A. All three claims are foreclosed by the United States Supreme Court's decision in *Egbert v. Boule*, 596 U.S. 482 (2022). These

claims are also time-barred under the applicable statute of limitations. Because an amendment to the Complaint would be futile, **COUNTS 1, 2,** and **3** and the entire action are **DISMISSED with prejudice**.

If Plaintiff wishes to appeal this dismissal, his notice of appeal must be filed with this Court within sixty days of the entry of judgment. FED. R. APP. P. 4(a)(1)(B)(iv). A motion for leave to appeal *in forma pauperis* should set forth the issues Plaintiff plans to present on appeal. *See* FED. R. APP. P. 24(a)(1)(C). If Plaintiff does choose to appeal, he will be liable for the $605.00 appellate filing fee irrespective of the outcome of the appeal. *See* FED. R. APP. P. 3(e); 28 U.S.C. § 1915(e)(2). A proper and timely motion filed pursuant to Federal Rule of Civil Procedure 59(e) may toll the 60-day appeal deadline. FED. R. APP. P. 4(a)(4). A Rule 59(e) motion must be filed no more than twenty-eight (28) days after the entry of the judgment, and this 28-day deadline cannot be extended.

The Clerk's Office is **DIRECTED** to close this case and enter judgment accordingly.

**IT IS SO ORDERED.**

DATED:  August 13, 2025              s/J. Phil Gilbert
                                     **J. PHIL GILBERT**
                                     **United States District Judge**